UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAMARA L. KEHOE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL NO.  3:08cv62 |
| ) | |
| 1st SOURCE BANK HEALTHCARE ) | |
| BENEFITS PLAN, ) | |
| ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the court on a motion for default judgment, filed by the plaintiff, Tamara L. Kehoe ("Kehoe"), on April 30, 2008.  The defendant, 1st Source Bank Healthcare Benefits Plan ("1st Source"), filed its response on May 2, 2008, to which Kehoe replied on May 8, 2008.

For the following reasons, the motion for default judgment will be denied.

Discussion

Kehoe recites the following facts in support of her motion for default judgment.   On March 31, 2008, Kehoe filed a complaint against 1st  Source under 29 U.S.C.A. § 1132, presenting a claim to recover benefits under section (a)(1)(B) and for costs and attorneys fees. A true and accurate copy of the Plan at issue was attached to the complaint.  On April 30, 2008, the Clerk for the Northern District of Indiana made an entry of default against 1st Source for failure to plead or otherwise defend as provided by the Federal Rules of Civil Procedure 55(a).

 On July 29, 2007, Ms. Kehoe reported to Memorial Hospital in South Bend, emergency room, with complaints of bilateral wrist pain, neck pain and nose pain. She reported

that she had consumed alcoholic beverages the night before. During the night she woke up, got out of bed, and fell on her face going to the bathroom.  Diagnostic testing revealed a fracture of the distal nasal vein, fracture of the distal left radius, fracture of the left ulnar styloid process, fracture of the distal right radius and fracture of the right ulnar styloid process.  Kehoe received treatment for these injuries from July 29, 2007 through November 5, 2007. Kehoe has been billed a total of $30,982.18 for this treatment as an uninsured patient.  Following her care and treatment she submitted her bill for payment through 1st Source Bank Healthcare Benefits Plan. North American Administrators responded to her request under the Plan and denied coverage for the claimed medical expenses, citing a policy exclusion in its Explanation of Benefits at Page 13, Item No. 8.  North American Administrators had requested medical records from Memorial Hospital, and these records allegedly indicated that Ms. Kehoe's blood alcohol level was 0.128 on July 29, 2007.

Page 13, Item No. 8 of the Plan, (Attached to Kehoe's complaint as Exhibit A) states in relevant part that benefits will not be payable for any of, but not strictly limited to, the following:

### d. EXCLUSIONS

> **8. Civil disturbances/crime -** Charges incurred as a result of participation in a riot or civil disturbance or while committing or attempting to commit an assault or felony or taking part as a principal or as an accessory in illegal activities or illegal occupation. <u>Charges resulting from an illness or injury incurred while under the influence of alcohol or illegal drugs as evidenced by a blood alcohol level equal to or in excess of the legal amount allowed in the state where the injury occurs or any other drug or alcohol screening test.</u>

Kehoe argues that her blood alcohol level was not in excess of the state's legal limits. In the state of Indiana, various blood alcohol limits have been established for individuals engaging

in specific acts or conduct. For example, a person who operates a vehicle with an alcohol concentration equivalent to at least eight-hundredths (0.08) grams of alcohol but less than fifteen hundredths (0.15) grams of alcohol per: one hundred (100) milliliters of the persons blood commits a class C misdemeanor. *I.C. 9-30-5-1 (West, 2007).* Or, a person who appears in a public place while intoxicated commits a class B misdemeanor. *I.C. 7.1-5-1-3 (West, 2007).*

Kehoe points out that in Indiana there is not a limit placed upon a legal amount of alcohol that an individual is allowed to consume while inside their residence. Thus Kehoe argues that there is not sufficient grounds to exclude from coverage her insurance benefits because there can be no finding that her blood alcohol level was in excess of that allowed under the circumstances, i.e., intoxication in one's own home. Kehoe concludes that benefits are due to her under the terms of her Plan because her intoxication was not illegal under any Indiana statute.

Kehoe also contends that the terms of the Plan, which was drafted by the defendant, are ambiguous and should be construed against the defendant. Kehoe thus requests that this Court enter a default judgment against 1st Source holding that she is entitled to judgment and the relief sought in her complaint, that the facts alleged in her complaint and motion for default judgment are true, and that the policy in question affords coverage for the medical care she received.

1st Source has responded to the motion for default and requests that the motion be denied. 1st Source states that due to internal mistakes made at its office, a response was not timely filed. 1st Source contends that there was a lack of willfulness in failing to timely file a response, quick action was taken once the mistake was learned, and there exists a meritorious defense to the lawsuit.

According to 1st Source, this lawsuit was not handled internally the way lawsuits are

normally handled at its office. That is, lawsuits received at 1st Source are supposed to be sent to the Legal Department for review and analysis. Instead, this lawsuit was first forwarded to 1st Source's Human Resources Department which then forwarded a copy of the lawsuit to 1st Source's counsel during the first week of April. As a result, the normal procedures for calendaring the receipt of the lawsuit and potential due dates was not followed with this lawsuit. (John Griffith Declaration at ¶ 4.)  After receiving the lawsuit, 1st Source attempted to analyze the issues raised by reviewing the matter internally, discussing the matter with the Plan Administrator, and discussing the matter further with the law firm that drafted the Plan. *(Id.* at ¶ 5.)

As it was evaluating settlement possibilities, 1st Source did not forward the complaint to outside counsel as it normally does for its litigation matters. 1st Source's General Counsel mistakenly thought 1st Source had thirty days to respond to the complaint after it was received by the Legal Department. *(Id.* at ¶¶ 6 and 8.)  On Monday, April 28, 2008, 1st Source's General Counsel called Plaintiff's counsel to check on the status of the case and to discuss settlement possibilities. (*Id.* at ¶ 7.)  During that conversation, Kehoe's counsel told 1st Source's General Counsel that Kehoe had filed a motion for default judgment. (*Id*.) Kehoe's counsel also refused a request to withdraw the motion for default judgment while the parties discussed settlement. (*Id*.) After this discussion with Kehoe's counsel, 1st Source immediately notified Barnes & Thornburg LLP of the case including the motion for default judgment. Barnes & Thornburg received the materials from 1st Source on April 29. *(Id.* at ¶ 9.)  This Court entered a notice of default on April 29.  On April 30, Kehoe filed her motion for default judgment.

Federal Rule of Civil Procedure 55(c) governs relief from clerk's entry of default. It

4

provides that "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." In the Seventh Circuit, to set aside the entry of default 1st Source must establish that there is: (1) good cause for its default, (2) quick action to correct the entry of default, and (3) a meritorious defense to plaintiff's complaint. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1401 (7th Cir. 1993).

"[E]xcusable neglect requires a showing that the "actions leading to the default were not willful, careless, or negligent." *Calumet Lumber v. Mid- America Indus. Inc.*, 103 F.3d 612, 614 (7th Cir. 1997). In the present case, the lawsuit was not initially sent to 1st Source's registered agent. 1st Source acknowledges it made a mistake in failing to notify outside counsel of its intent to defend the lawsuit while pursuing settlement possibilities internally. The lawsuit was also not handled internally the way lawsuits are normally handled which led to further mistakes. 1st Source also mistakenly believed that it had 30 days to respond to the complaint. Nevertheless, 1st Source maintains that this is not a case where it was willfully ignoring or evading court deadlines. Its General Counsel initiated a call to opposing counsel to discuss settlement and the status of the case. In doing so, he was under the mistaken impression that the time to file a response to the complaint had not passed.

The Clerk has entered a notice of default but no default judgment has been entered. As such, the standard for setting aside the entry of default is much more liberally applied than if a default judgment had been entered. *See, e.g., Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994); *see also Passarella v. Hilton Int'l Co.*, 810 F.2d 674, 678 (7th Cir. 1987) (reversing default judgment "where the defendant has a reasonable explanation for its

5

conduct that excludes any possibility of willfulness, and the defendant has an obviously meritorious defense to the plaintiff's claim, the interest of justice. . . demand that the default judgment be vacated and the case be allowed to proceed to trial.").

1st Source argues that in the present case there was a mistake made that once identified was acted upon quickly in an effort to preserve 1st Source's rights. 1st Source contends that under these circumstances, excusable neglect exists to justify relief from the default judgment. *See Wolf Lake Terminal, Inc.,* 433 F.Supp.2d at 942 ("Under these circumstances, Mutual Marine's technical failure to file an answer has not prejudiced the plaintiffs or otherwise delayed the litigation of this case. Therefore, the motion for default judgment is denied.").

1st Source also claims that it took quick action to correct entry of default. That is, 1st Source immediately forwarded the lawsuit to outside counsel after learning of the motion for default judgment. Outside counsel entered his appearance within two days of receiving the materials and this opposition to the motion for default judgment was filed the next day. 1st Source argues that the quick action taken is evidence of the lack of willfulness and bad faith required to enter a default judgment. 1st Source further notes that the lawsuit was filed a little over one month ago and any prejudice suffered by Kehoe is *de minimis*. *Tate v. Riverboat Servs., Inc.*, 305 F.Supp.2d 916, 921 (N.D. Ind. 2004) ("[A]s this matter did not progress past the complaint, vacating the judgment in this case would not prejudice any judicial proceedings.")

1st Source also claims that it has a meritorious defense to Kehoe's complaint.  Under the Plan, the Administrator is given discretion to administer the Plan.  Kehoe's claim was reviewed and rejected not once but twice.  Thus 1st Source argues that, at a minimum, the relevant language in the Plan creates a factual issue as to whether the Plan was justified in denying the

6

claim. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Bieganek v. Taylor*, 801 F.2d 879, 882 (7th Cir. 1986); *Jones*, 39 F.3d at 165 (Defendant only required to present a defense "which at least raises a serious question regarding the propriety of [the] default judgment and which is supported by a developed legal and factual basis."). Coupled with the principle that cases should be tried on the merits, 1st Source respectfully requests that the Court deny the motion for default judgment.

Kehoe, in reply, implicitly acknowledges that 1st Source's conduct (and lack of action) was not willful, but claims that 1st Source has failed to show that it did not act carelessly or negligent. Kehoe argues that 1st Source's counsel is charged with the knowledge that a compalint must be answered in a specified period of time, and further notes that the summons that is part of the clerk's record and was attached to the complaint further sets forth the deadline to respond to Kehoe's complaint. Kehoe argues that if Mr. Griffith at 1st Source received the complaint during the first week of April, then he still had plenty of time to file a timely answer, if he had bothered to inquire as to when he needed to file his answer instead of presuming he had 30 days to answer.

Kehoe also denies that 1st Source attempted to settle the case. Kehoe's counsel acknowledges talking with Mr. Griffith on Monday, April 28, 2008, but claims that Mr. Griffith merely asked whether Kehoe's homeowner policy of insurance would cover her medical expenses. Kehoe's counsel also notes that it explained to Mr. Griffith that he had no authority to withdraw the motion for default in light of the denial of benefits and the fact that Kehoe is being pursued by creditors for an excess of $30,000 for the healthcare she received.

Kehoe also argues that 1st Source did not take quick action to correct the entry of default.

7

Kehoe points out that 1st Source's general counsel had a copy of this complaint for at least 24 days before he even decided to contact Kehoe's counsel. During that span, 1st Source failed to file an appearance or an answer or even look up when it might have to do these items.

Finally, Kehoe states that "[i]n putting forth the grounds for a meritorious defense in this case, the Defendant fails to address the nature of the complaint against it...."

It is clear to this court that this is not a case of bad faith or willful disobedience. Nor is there any negligence involved. Clearly, the lawsuit has been handled somewhat carelessly by 1st Source, yet this degree of carelessness does not rise to the level to support a grant of a default judgment in this court. 1st Source has freely admitted its mistakes and has now taken steps to get the lawsuit on the right track. 1st Source promptly contacted outside counsel upon learning of the entry of default, and a response to the default judgment was quickly filed. This court finds that 1st Source's conduct since learning of the entry of default is sufficient in this case and thus the court will follow its preferred policy of permitting cases to be resolved on the merits.

With respect to the existence of a "meritorious defense", it appears from the limited facts before the court that 1st Source has enough of a defense to at least preserve its right to present that defense. Although Kehoe is correct that ambiguous Plan language is construed against the drafter, the question of whether language is ambiguous is seldom clear-cut and requires (at minimum) an examination of the entire Plan as a whole.

Accordingly, for all the foregoing reasons, the motion for default judgment will be denied.

## Conclusion

Based on the foregoing, Kehoe's motion for default judgment is hereby DENIED.

Entered: May 23, 2008.

                                                s/ William C. Lee  
                                                William C. Lee, Judge  
                                                United States District Court